MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

DEREK OWENS (CABN 230237)
S. WAQAR HASIB (CABN 234818)
Assistant United States Attorneys

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-6488
   FAX: (415) 436-7234
   Email: derek.owens@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 08-0461 PJH |
|    Plaintiff, ) | UNITED STATES' SENTENCING MEMORANDUM |
| v. ) | Date: December 7, 2011 |
| PENG XIANG LI, ) | Time: 1:30 p.m. |
|    Defendant. ) | |

## I. INTRODUCTION

On September 16, 2011, defendant Peng Xiang Li (hereafter "defendant") was found guilty by a jury of conspiracy to manufacture, distribute, and possess with intent to distribute 1,000 or more marijuana plants, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(vii), and the manufacture, distribution, and possession with the intent to distribute 1,000 or more marijuana plants, and aiding and abetting the same, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(vii), and § 2. The Court has set December 7, 2011, at 1:30 p.m. as the date for judgment and sentencing.

The government submits the following sentencing memorandum in order to advise the

Court of the government's sentencing guideline calculations, any objections to the presentence report ("PSR"), and its sentencing recommendation.

## II. BACKGROUND

A. <u>Defendant's Offense Conduct.</u>

Beginning at some point prior to July of 2007, the defendant and several other individuals commenced the manufacture and distribution of marijuana at multiple grow sites in the San Francisco Bay area. The defendant was the leader of the group he referred to as "The Company" and had individuals who followed his direction in the manufacture and distribution process. There is evidence of at least six individuals working under the defendant in the marijuana grow operations: Songfa Gong ("Gong"), Daniel Park ("Park"), Wings Lam ("Lam"), Tommy Tam, Jimmy Chen, and Jun Deng, a/k/a Piggy. The defendant and his Company operated grow houses at residential houses in Antioch, Pinole, and Pittsburgh, and a processing center in Oakland. During searches of the Pinole and Pittsburgh grow houses, law enforcement officers seized more than 1,000 plants of marijuana. At trial, Park testified that there were multiple grow cycles conducted at the locations and the defendant conspired in the cultivation and distribution of more than 3,000 marijuana plants. PSR at ¶16.

<u>600 Carlotta Avenue in Pinole, California</u>

On April 14, 2008, a search was conducted of 600 Carlotta Avenue based on report of a break-in to Pinole Police Department. The search was conducted pursuant to a search warrant obtained by Contra Costa state authorities. During the course of the search, 388 plants were found. The location was a sophisticated growing operation with rigged electrical system, grow lights throughout, watering systems throughout, ventilation punched through walls, fertilizers, etc.

The evidence that links the defendant to this grow house includes the surveillance by the Federal Bureau of Investigation ("FBI") and recorded wiretap conversations from a court authorized telephone intercept.

<u>2266 Willow Avenue in Pittsburg, California</u>

On July 16, 2008, a federal search warrant was conducted at 2266 Willow Avenue.

UNITED STATES' SENTENCING MEMORANDUM
CR 08-0461 PJH                                                2

During the search, 892 marijuana plants were found.  This location also had sophisticated marijuana growing equipment.

B.  <u>Forfeiture of One Rolex Watch</u>

The Superseding Indictment gave notice to the defendant that the government was seeking forfeiture of the property derived from proceeds of drug trafficking, including the jewelry seized from his residence on July 16, 2008.  The defendant contends the seized pieces of jewelry were wedding gifts presented to him and his wife.  PSR at ¶17.  Expert witness Steven Injayan testified at trial that the appraised value of the jewelry at the residence was $33,700.00.  <u>Id</u>.  One of the seized pieces of jewelry was a steel Rolex watch, serial number M156331, (hereafter "the Rolex").  The Government only seeks forfeiture of the Rolex watch, not the other pieces of seized jewelry.

The defendant must forfeit to the United States any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of his convictions for Title 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(vii).  <u>See</u> 21 U.S.C. §853(a)(1).  The term "property" includes tangible and intangible personal property.  21 U.S.C. §853(b)(2).  Under §853(a)(1), the government need prove by only preponderance of the evidence, and not beyond a reasonable doubt, that property should be criminally forfeited.  <u>United States v. Hernandez-Escarsega</u>, 886 F.2d 1560, 1577 (9th Cir.1989).  This burden of proof is constitutional because the criminal forfeiture provision does not itself describe a separate offense, but is merely an "additional penalty" for an offense that must be proved beyond a reasonable doubt.  <u>Id</u>.

The Rolex watch was shipped from Rolex, Inc. to the Tourneau retail store on Market Street in San Francisco in May 2008.  <u>Id</u>.  Obviously, it is impossible the Rolex was a wedding gift if it was not even sent to the retailer until four years after the defendant's 2004 wedding.  The appraised value of the Rolex is $6,000.00, and it was purchased within the two months preceding federal agents shutting down the defendant's marijuana operations.  Wiretap evidence and Daniel Park's testimony at trial demonstrated that the defendant's drug trafficking operation was in full production from 2007 through July 16, 2008.  Therefore, the defendant obtained the

Rolex watch squarely within the period of the drug trafficking conspiracy.

Because the defendant lacked any legitimate sources of income during this period other than drug dealing, a preponderance of the evidence supports that the Rolex was obtained with proceeds from the defendant's drug operations. FBI Special Agent Joe Yum testified at trial that during his extensive surveillance and wiretap monitoring of the defendant in 2007 and 2008, he never saw any evidence of the defendant with legitimate employment. The PSR indicates that the defendant cannot recall dates or provide locations where he has worked. PSR at ¶52. Agent Yum went to one of the restaurants the defendant told Pretrial Services that he work at, but none of the employees knew the defendant or recognized his photograph. Id.

Based on the defendant's drug dealing, his lack of employment, and his false explanation that the Rolex was as a wedding gift, a preponderance of the evidence supports that the $6,000.00 Rolex watch was purchased with drug sale proceeds and must be forfeited.

### III. SENTENCING GUIDELINES CALCULATIONS

| | | | |
|---|---|---|---|
| 1. | Base Offense Level, U.S.S.G. § 2D1.1(c)(7): | | 26 |
| 2. | Organizer/Leader, U.S.S.G. §3B1.1(a): | | +4 |
| 3. | Total Offense Level: | | 30 |

The government concurs with the computation by U.S. Probation that includes one criminal history point and a Criminal History Category of I.

### IV. ARGUMENT

The Court should order a term of imprisonment of 120 months. The overarching statutory charge for a court is to "impose a sentence sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a) and (a)(2). United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008).

A. The Defendant Has Earned A Sentence of 120 Months in Custody.

Based on the defendant's criminal history and his offense level, the Guideline range for the offense conduct would be 97-121 months. The government recommends a sentence of

imprisonment of 120 months, which is within the guidelines range calculated pursuant to the United States Sentencing Guidelines, and the mandatory minimum for this offense. The defendant's conduct is serious and 120 months in custody represents a reasonable and appropriate sentence for this defendant who was a major distributor of marijuana, and the leader of "The Company."

The instant offense involved the defendant setting up a series of franchise-like marijuana grow houses in East Bay suburbs. Unbeknownst the owners of these residences, or to the neighbors, the defendant and his co-conspirators were operating high-volume drug trafficking in the neighborhoods. These operations stole electricity through the electrical bypass process (described at trial by Park and Marijuana Grow Expert Carlos Alfaro), destroyed the interior of these homes with hydration and ventilation systems, and brought the inherent dangers of drug trafficking (home invasion robbery at the Carlotta residence) to these otherwise tranquil suburban neighborhoods.

His illegal activities allowed the defendant and his wife to live a very comfortable lifestyle, complete with a nice residence on Mark Twain Drive in Antioch, a Mercedes, a Lexus, international vacations to China, expensive jewelry - Rolex and Gucci, and over $19,000 in cash in their bedroom. The defendant was living the comfortable life of a high-end drug dealer.

Such conduct demonstrates a need for a sentence that reflects the seriousness of the offense, promotes respect for the law, provides for just punishment and adequate deterrence, and protects the public from further crimes of the defendant. See 18 U.S.C. §3553(a)(2)(A)-(C). A sentence of 120 months serves these needs, but is not greater than necessary.

B. Response the Defendant's Objections to the PSR

    1) The Defendant Is Not Eligible For Safety Valve Consideration

In order to avoid the 120 mandatory minimum sentence in this case, the defendant must satisfy the five "safety valve" requirements under 18 U.S.C. § 3553(f). The safety valve provision contained in U.S.S.G. § 5C1.2 is identical to and implements the language listed by Congress in 18 U.S.C. § 3553(f). He has failed to satisfy the fourth and fifth requirements of 18 U.S.C. § 3553(f) or U.S.S.G. § 5C1.2. See 18 U.S.C. § 3553(f)(4) (organizer, leader, etc.) &

(f)(5) (truthfully admit conduct to government).

      a)      <u>Safety Valve Burden of Proof</u>

The defendant has the burden of showing he has met the criteria for the safety valve by a preponderance of the evidence. <u>See</u> <u>United States v. Diaz-Cardenas</u>, 351 F.3d 404, 409 (9th Cir. 2003), <u>citing</u> <u>United States v. Ajugwo</u>, 82 F.3d 925, 929 (9th Cir.1996) (burden at sentencing is on defendant to prove by a preponderance of the evidence that he qualified for the safety valve provision). If defendant makes this showing, the government can rebut by showing that the information supplied to the government was untrue or incomplete. <u>United States v. Shrestha</u>, 86 F.3d 935, 940 (9th Cir.1996). In this case, the defendant cannot meet his burden to demonstrate he was not an organizer/leader. Additionally, based on his false statements to the FBI during an interview, he cannot meet the criteria for safety valve under 18 U.S.C. § 3553(f) or U.S.S.G. § 5C1.2.

      b)      <u>The Defendant Was an Organizer, Leader, Manager, and Supervisor In the Offense and Cannot Satisfy 18 U.S.C. § 3553(f)(4)</u>

In order to be "safety valve eligible," the defendant must not have been in an organizer, leader, manager, or supervisor position in the drug conspiracy. <u>See</u> U.S.S.G. § 5C1.2, App. Note 5 (Organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines," as used in subsection (a)(4), means a defendant who receives an adjustment for an aggravating role under § 3B1.1). Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. <u>See</u> U.S.S.G. § 3B1.1, App. Note 4. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. <u>Id</u>.

In this case, the evidence presented at trial demonstrated the defendant was the organizer, leader, manager, and supervisor of several marijuana grow houses in the East Bay suburbs and one processing center in Oakland. The government need only show that he filled one of these

1 roles, however the evidence established that he wore all of these hats for The Company.

2 The defendant was the leader of a Company that consisted of Songfa Gong, Daniel Park, Wings Lam, Tommy Tam, Jimmy Chen, and Deng, a/k/a Piggy. The goal of The Company was to make money by cultivating and distributing marijuana, and the defendant was determined to be the leader. See PSR at ¶8. The defendant's role as organizer and leader is supported by the recorded calls, Park's testimony, FBI Special Agent Yum's testimony. Park and Chen were used to get the PG&E set up in the marijuana grow houses; Lam and Tam were used as workers; and Songfa Gong was a manager and salesman. The Company had different locations and used a company van to transport the marijuana from the grow locations to the processing center in Oakland for drying and packaging.

The following intercepted telephone calls are attached as Govt. Sentencing Exhibit 1, and demonstrate the defendant's organizer/leader role in the organization:

**July 24, 2007 call between the defendant and Gong- Trial Exh. #6-093, page WT000056**

| | |
|---|---|
| Defendant: | Whoever is good, The Company is surely not going to be partial. Whoever is good is going to be treated well. Do you agree? |
| Gong: | Right, right. |

**July 24, 2007 call between the defendant and Gong - Trial Exh. #6-093, WT000057**

| | |
|---|---|
| Defendant: | Everyone is putting in money right now, right? You know what I'm saying? After I return from vacationing in China, right? Then we can operate on one or two more places. You know what I am saying? |
| Gong: | I understand. I know. |
| Defendant: | How are we going to make it if things are done that way? |
| Gong: | You are right. |
| Defendant: | Am I right? |
| Gong: | Yes. Yes. I got it. |
| Defendant: | Okay? |
| Gong: | Yes. |
| Defendant: | Yeah, then next time with those things, right? I hope that you talk to Ah Wing, Tommy, tell them ... Piggy told me that his doggies could be treated like little fishes and change the water. You understand? |
| Gong: | Yes, only that I forgot that one thing. |
| Defendant: | Okay, forgot this one thing, right? |

UNITED STATES' SENTENCING MEMORANDUM
CR 08-0461 PJH                                              7

| | | |
|---|---|---|
| Gong: | Yes. | |
| Defendant: | In that case, it is man-made. | |
| Gong: | That is correct. | |
| Defendant: | Okay? | |
| Gong: | Right. | |
| Defendant: | So next time, I don't want it to be like before, demanding this and that, you understand? | |
| Gong: | Right. Right. Right. | |

**August 6, 2007 call between Gong and Lam - Trial Exh. #6-2919, WT000065**
    Gong:        Steven [the defendant] fucking chewed me out asking why are things the way they are.
                       Why didn't you add the solution?

**August 13, 2007 call between defendant and Gong - Trial Exh. #6-3731, WT000079-80**
    Defendant instructs Gong to get eight pounds of marijuana ready to sell.
    Defendant:    These things are useless if they just sit there. They will only turn into money once they go out, ok?
    Gong:        Yes.
    Defendant:    You get eight pieces ready right now.

**August 14, 2007 call between defendant and Gong - Trial Exh. #6-3810, WT000098-80**
    Gong:        The idiot is back to normal again (referring to worker Lam).
    ...
    Defendant:    If he doesn't show up for work, fire him. I don't fucking care. Okay?

**November 25, 2007 calls between Park and defendant - Trial Exh. #6-793, #6-794**
    - Defendant instructing Park on how to set up a lease at a new grow house and to recruit another member, Steven Chi, in order to open another grow location. **WT000009-11**
    - Defendant instructing Park they will "go check out fucking the electric box" in order to evaluate it for an electricity bypass. **WT000012**.

    These recorded calls are just a portion of the recordings admitted into evidence at trial that demonstrate the defendant's leadership role in The Company, and the factors listed in U.S.S.G. § 3B1.1, App. Note 4 (decision making authority, the nature of participation in the

UNITED STATES' SENTENCING MEMORANDUM
CR 08-0461 PJH                                          8

commission of the offense, the recruitment of accomplices, the degree of participation in planning or organizing the offense, and the degree of control and authority exercised over others). Only a leader and organizer has the decision making authority and control to order the termination of a worker in the organization. That is what the defendant did in the August 14, 2007 call when he ordered Gong to fire Lam if he did not show up for work.

On August 13, 2007, the defendant instructs Gong to "get eight pieces (pounds) ready now." He tells Gong that "these things are useless if they just sit there. They will only turn into money once they go out, ok?" This is a clear command to Gong to get the product ready for a quick sale, and reinforces that their endeavor was a business. Like every business, the organization must move or sell inventory in order to generate money and make a profit. The goal of the defendant and The Company was no different.

On August 24, 2007, the defendant demonstrated his influence and control over Gong, a mid-level manager, when he scolded him for the way operations were being handled. Gong said, "You are right." Defendant asked, "Am I right?" Gong replied, "Yes. Yes. I got it." These are classic supervisor-subordinate relations and exhibit Gong's deference to the defendant's position in the organization. During the same August 24 call, the defendant indicates they can open one or two more grow houses when they return from China. Again, describing growth opportunities for The Company with the goal of increased profits.

The November 25, 2007 calls between the defendant and Park corroborate Park's testimony at trial that the defendant was in charge of the operations. The calls show the defendant coaching Park on how to look for a grow house, what to look for, and asks him about recruiting new member Steven Chi.

Based on these calls, the testimony of Park, and the testimony of Special Agent Joe Yum, it is clear that the defendant was a leader/organizer in The Company. His leadership role precludes him from being eligible for the safety valve provisions of 18 U.S.C. § 3553(f)(4).

    c)    <u>The Defendant Has Failed to Truthfully Admit His Conduct Under 18 U.S.C. § 3553(f)(5)</u>

Another reason the defendant has not met the criteria required under § 5C1.2 is because

UNITED STATES' SENTENCING MEMORANDUM
CR 08-0461 PJH                              9

he did not "truthfully" provide to the government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, as specifically required under § 5C1.2(a)(5).  See U.S.S.G. § 5C1.2, App. Note 3 ("Offense," as used in subsection (a)(2)-(4), and "offense or offenses that were part of the same course of conduct or of a common scheme or plan," as used in subsection (a)(5), mean the offense of conviction and all relevant conduct); 18 U.S.C. § 3553(f)(5)(the defendant must "truthfully" provide the Government all information the defendant has regarding the offense).

The Ninth Circuit has clearly stated that the "defendant must provide all the information that he has about his offense of conviction *and* about offenses that were part of the same course of conduct or common scheme." (emphasis in original) United States v. Miller, 151 F.3d 957, 959-60 (9th Cir. 1998) ("If Congress had intended to limit disclosures to the offense of conviction, it could easily have said so.").

A defendant must comply with the five explicit requirements listed by Congress to be eligible for safety valve, including that the defendant truthfully provide to the government all information and evidence the defendant has concerning the offense.  United States v. Thompson, 81 F.3d 877,879 (9th Cir. 1996) ("by refusing to reveal the source of the methamphetamine involved in the case, [defendant] failed to fulfill the requirement of subsection 5 to provide the Government with all the information and evidence he had concerning the offense").  The phrase "all information and evidence" is quite broad.  Id. at 879.  There is no limit placed on the type of information that must be provided.  Id.  To the contrary, the plain meaning of the phrase is that any and all information that the defendant possesses concerning the offense must be provided to the Government.  Id.  If the defendant chooses to not comply with subsection 5, he is not entitled to application of the safety valve even though he may be a less culpable offender.  Id.  In this case, the defendant is not less culpable than any of the other defendants in this case, and he has not complied with subsection 5 of the safety valve provision.

In a February 18, 2009 interview with the FBI, the defendant minimized his conduct in the grow operation regarding the size of the grows and his leadership role.  See attached Exhibit 2.  Additionally, he lied when he said he was unaware of co-defendant Minh Trung Ngo's illegal

UNITED STATES' SENTENCING MEMORANDUM
CR 08-0461 PJH                                             10

conduct.  During trial, the government played a telephone call between the defendant and Ngo where the defendant was selling Ngo marijuana for $3,300.00 per pound.  See Trial Exh. # 6-904.  The defendant also lied about the activities of co-defendant Leon Kwan.  Kwan and his wife operated brothels disguised as massage parlors, and also other marijuana grow houses in the East Bay.  The defendant was intercepted on the wiretaps in this case discussing potential prostitutes that Kwan could provide, and also the sales of marijuana between Kwan and the defendant.

Based on the false information provided during the 2009 interview, he cannot use his statements during that interview as a basis for safety valve eligibility under 18 U.S.C. § 3553(f) or U.S.S.G. § 5C1.2.

## V. CONCLUSION

For the reasons set forth above, the defendant is not safety valve eligible, and the government recommends the Court impose a 120 month term of imprisonment followed by five years of supervised release, and a $200 special assessment.

DATED: November 30, 2010            Respectfully submitted,

MELINDA HAAG
United States Attorney

/s/ Derek  Owens
DEREK OWENS
Assistant United States Attorney