JAMES PHILLIP VAUGHNS, State Bar #124040
Law Offices of James Phillip Vaughns
6114 LaSalle Avenue, Suite 289
Oakland, California 94611
Telephone: 510-583-9622
Facsimile: 510-886-7218

Attorney for Defendant PENG XIANG LI

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, CALIFORNIA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br><br>PENG XIANG LI,<br><br>　　　　Defendant. | NO.: CR 08-00461 PJH<br><br>**SENTENCING MEMORANDUM**<br><br><br><br>Date: December 7, 2011<br>Time: 1:30 p.m.<br>Hon. Phyllis J. Hamilron |

## BACKGROUND

The PSR[1], accurately expresses Mr. Li's personal history and, in large part, arrives at the correct Guidelines calculations. The main areas of dispute are whether an adjustment under the Guidelines for role in the offense is appropriate and whether Mr. Li is eligible for safety valve treatment.

## APPLICABLE LAW

*United States v. Booker* (2005) 543 U.S. 220, established the principle that the Sentencing Guidelines are now advisory only and that, at sentencing, federal judges must continue to consult the Guidelines, but are obliged to give effect to the criteria set forth in 18 U.S.C. § 3553(a).

---

[1] PSR, herinafter refers to the Presentence Investigation Report prepared for this case by Jessica Goldsberry, USPO.

In light of *Booker*, judges have finally been restored to their rightful position of possessing the discretion to fashion a sentence based on the particular facts of a case and the particular characteristics of a defendant - not fashioning a sentence based on a rigid set of rules that ignore those particularities.

Mr. Li respectfully requests that the Court consider all of the factors outlined in 18 U.S.C. § 3553(a) and determine a sentence that is sufficient, but not greater than necessary to meet the goals of sentencing.

Thus, while the PSR calculates an adjusted offense level of 30, and reasons that a mandatory minimum sentence of 120 months is required, it will be respectfully argued that the appropriate offense level should be 26 for a range of 63-78 months under the advisory Guidelines and that the mandatory minimum sentence is not applicable. The request from Mr. Li is that the Court consider sentencing him to a term of 63 months imprisonment.

## GUIDELINES CALCULATIONS

As stated above, there is a dispute regarding the leadership role adjustment leading to the offense level in the PSR. This issue also determines the applicability of the mandatory minimum sentence of 120 months.

### Mr. Li Was Not a Leader

The PSR opines, at paragraphs 8-9, that Mr. Li was a leader because of intercepted calls in which he is heard directing the operation and dictating terms. While it is true that there are calls during which Mr. Li tells others what to do, the extent of the analysis should go a bit farther. USSG § 3B1.1 addresses the question of determining who is or who is not a leader for aggravating role adjustment purposes.[2]

Application Note 4 to 3B1.1 provides a non-exhaustive list of factors for the court to consider, including: the exercise of decision making authority, the nature of participation

---

[2] It is the Government's burden to establish the facts necessary to prove a defendant's leadership role. The government's burden of proof at sentencing is a well-established proposition in federal sentencing law. United States v. Johansson, 249 F.3d 848, 853 (9th Cir. 2001), citing, United States v. Watts, 519 U.S. 148, 156 (1997) (citing U.S.S.G. § 6A1.3, Commentary); United States v. Restrepo, 946 F.2d 654 (9th Cir. 1991) (en banc).

in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. USSG §3B1.1, comment (n.4).

While the pointing to intercepted calls and the opining by a non-participant of the tenor of those calls is one way of establishing role adjustment, it cannot be disputed that the opinion of one of the actual participants is likely to be more accurate and, thus, more persuasive. Here, the cooperating witness, Daniel Park, testified that there really wasn't a leader of the operation and that profits and responsibilities were shared equally between Songfa Gong, Jun Deng, Mr. Li, and Park himself. He did state that, *if there was a leader*, it would have been Mr. Li. However, the implied assumption that every group endeavor must have a leader is inaccurate as the current nationwide "Occupy" phenomenon has certainly proven.

Even if one were to focus on the intercepted calls and ignore the sworn testimony of the insider Park, there are numerous calls during which alleged underlings are chastising other alleged underlings (See Exhibit 1, attached hereto, for an example of one such call). These calls demonstrate that there were no well-defined roles among the people involved in this case. The communal nature of the overall operation is revealed during one call between Deng and Gong when Deng says, "Sometimes, when Steven (Mr. Li) has already thought it through and we have already thought it through and then tell you what to do, there must be a reason behind it. Otherwise we will not ask you to do it in such a way." (See PSR, paragraph 9 and Exhibit 2, attached hereto) Deng used the term "we" in describing the originators of the directives given to Gong. Had Mr. Li truly been the penultimate leader as the PSR seeks to characterize him as being, it is unlikely the Deng would have phrased his communication to Gong in that manner. It is also doubtful that an underling would be treated with such deference - there would be no need to explain why an underling should follow orders. "Do or die, do not question why" would seem to be a more appropriate philosophy if a true leadership structure was present rather than the

gentle explaining of the leaders' rationale behind the orders.

The most reasonable interpretation of the operation - based on the evidence and not on an outsider's opinion - is that several contemporaries joined forces to grow marijuana. They agreed to pool their time and resources to make the operation a success. It is evident that no one person - certainly not Mr. Li - sought to establish a typical hierarchical drug distribution "cartel" to be governed by the archetypical "kingpin." It is true that one can still be a leader for Guidelines analysis purposes without being a kingpin and it is also true that an operation or endeavor can have more than one leader. However, the instant operation was so loosely organized that the question has to be asked who were the followers if everyone was a leader.

### If Not a Leader, Then Mr. Li is Safety Valve Eligible

The PSR correctly concludes that, given the number of marijuana plants at issue, a minimum mandatory sentence of 120 months would be indicated. However, the Court need not impose a minimum mandatory sentence in the event the defendant meets the five conditions of 18 U.S.C. §3553(f): (1) no one was harmed during the offense, (2) the offender has little or no history of criminal convictions, (3) the offender did not use violence or a gun, (4) the offender was not a leader or organizer of the offense, and (5) the offender told the prosecutor all that they know about the offense.

Here, Mr. Li clearly and unquestionably satisfies the first three criteria. The discussion above addresses the fourth element. Attached hereto as Exhibit 3 is the Government's report of Mr. Li's proffer session conducted after his arrest which addresses the fifth.

During the session, there is no mention by the recording agent that Mr. Li lied about any subject relating to the marijuana growing enterprise. Mr. Li readily identified both of the locations which formed the crux of the Government's case at trial: 600 Carlotta Circle and 2266 Willow Avenue. He even told the agents the prices for which the marijuana sold and noted, in all candor, that selling marijuana resulted in better money than "regular" employment.

Given his early admission to the Government of his involvement in marijuana growing, it is hoped that the Court recognizes that Mr. Li's decision to go to trial (where he adduced no evidence in his defense) was a function of his desiring to preserve his suppression motion issues rather than an assertion of factual innocence.

**FACTORS TO BE CONSIDERED IN IMPOSING SENTENCE**

The primary directive in 18 U.S.C. § 3553(a) is for sentencing Courts to impose a sentence which is sufficient, but not greater than necessary, to comply with the four objectives of sentencing:

(1) to provide just punishment; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from further crimes of the defendant; (4) and to provide the defendant with effective rehabilitative treatment.

As noted above, under *Booker*, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in18 U.S.C. § 3553(a). In determining a minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider certain factors, particularly the following:

**(1) Circumstances of the Offense and Characteristics of the Defendant**

Mr. Li recognizes the seriousness of the charged crimes and does not believe there is anything about the circumstances of the offenses that merits particular elucidation here. However, it bears repeating that Mr. Li was convicted of offenses relating to marijuana, a substance that - while criminalized federally - has identifiable medical benefits and has been de-criminalized in some state jurisdictions. That distinction, which separates Mr. Li from many of his co-defendants whose drug involvement was not limited to marijuana, speaks to the lower level of lawlessness and danger to the public his crimes demonstrate. As the PSR notes, the law enforcement effort that led to Mr. Li's arrest began as a much broader, multi-state operation that was originally focused on more serious drugs like Ecstacy and on individuals other than Mr. Li.

*Personal Characteristics*

Mr. Li, now 29 years old, has lived here in the United States without his parents since he was 17.  Once married, he found that he and his wife could create a family existence that would nurture him in the absence of his parents. Unfortunately, the impact of his arrest and incarceration has, apparently, caused his wife to vanish from his life leaving him with only one close friend, David Truong. In all likelihood, Mr. Li will be returned to China after his release from incarceration given the nature of his convictions. With little left here in the United States, his return to China may be the best thing for him. A lengthy prison sentence keeping him here in the United States will not serve the best interests of the public in this instance.

### (2) Sentence Disparity

The PSR notes that the co-defendants in this case have been sentenced to terms of imprisonment from 366 days to 135 months. The bulk of the sentenced defendants received less than 70 months. It is fair to say that the defendants sentenced to the lengthier terms of imprisonment had suffered prior criminal convictions. Mr. Li, in contrast, has no convictions and has never even been prosecuted for any crime. For him to receive the recommended 120 months would constitute a sentencing disparity of the highest order given his utter lack of criminal history.

### CONCLUSION

Mr. Li was no more a leader of the marijuana operation he was involved in than any other participant. He may have been the loudest and, perhaps, the crudest of them. However, a lack of civility is, thankfully, not yet criminalized. Because he was not a leader, he does not warrant a role adjustment. Because he was not a leader, he is not ineligible for safety valve treatment..

The Court heard the testimony in this case. The evidence was clear that this case was about a local, albeit multi-location, marijuana growing effort by several people. It was simple in that it was a one-level operation. Unlike other, larger-scale, operations where there are "pipelines" from the source of the drugs to the processors to the bulk sellers to the street sellers,

this group of [former] friends simply grew it and sold it. There were no bloody turf battles. There were no power moves. The Government stumbled upon it only because the multi-faceted Songfa Gong was dealing in thousand pill quantities of Ecstacy with others at the same time he was involved with Mr. Li and marijuana. Yes, the same Songfa Gong whom the PSR uses as an example of a person Mr. Li was supposed to be leading, lecturing, and otherwise bossing around was the true target of the wiretap in this investigation. It is hard to imagine an underling being a target worthy of the electronic surveillance firepower wielded by the Government here.

What this case was NOT about, was a high-level, tonnage quantity, sophisticated and violent drug gang populated by recidivist thugs. Had there been elements of violence, had there been evidence of Mr. Li being involved in any other drugs besides marijuana, a lengthy prison sentence would be warranted. In the absence of those elements, it is respectfully recommended that the Court sentence Mr. Li to 63 months imprisonment.

Dated: November 30, 2011          Respectfully submitted,


                                  -S-

                                  _____
                                  JAMES PHILLIP VAUGHNS
                                  Attorney for Peng Xiang LI